IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| TIFFANY SANDERS ESTATE, ) <br> A/K/A TIFFANY SANDERS, AND ) <br> THE TIFFANY SANDERS ESTATE, ) <br> C/O TIFFANY SANDERS, ) <br> EXECUTOR, ) <br>           ) <br>      Plaintiffs, ) <br>           ) <br> v.          ) <br>           ) <br>           ) <br> KENT MCPHAIL, *et al.*,  ) <br>           ) <br>      Defendants.  ) | Case No. 3:24-cv-180-RAH |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are the motions to dismiss filed by Defendants Kent McPhail, Jeff Nelson and Shannon Rollins. The motions are due to be granted.

### BACKGROUND

This proceeding arises out of Plaintiff Tiffany Sanders's efforts to stop her eviction from her foreclosed residence. That eviction came after the Circuit Court of Chambers County, Alabama, Judge William I. Whorton presiding, granted Carrington Mortgage Services, LLC's summary judgment motion and ejected Sanders from her residence in Lanett, Alabama via order dated March 11, 2024. After Judge Whorton's order, a writ of possession was issued and executed on Sanders in May of 2024, under which she was removed from the property.[1]

---

[1] A review of the state court file shows that Judge Whorton issued several follow-up orders after Sanders attempted to re-enter the property.

Approximately ten days after losing in state court, Sanders initiated this civil action on March 21, 2024, with a two-page Complaint purportedly filed on behalf of the "Tiffany Sanders Estate." (*See* doc. 1.) Her initial complaint, and two almost immediately filed amendments, named approximately twenty defendants including various financial institutions and their officers, attorneys, law enforcement officers, and state public officials, including a state court circuit judge, probate judge, revenue commissioner, and clerk of court.

At a May 30, 2024, status conference with the assigned Magistrate Judge, Sanders acknowledged the need to further amend the Complaint to clarify her allegations and claims. The Court thus afforded her the opportunity and explained in detail the pleading requirements imposed by the Federal Rules of Civil Procedure. (*See* doc. 34.)

Sanders filed an amended "Complaint" on June 26, 2024. (*See* doc. 38.) The new complaint was three-pages long and merely listed an assortment of "claims" by name but failed to contain any factual detail to support any of the purported "claims" against any of the named defendants. Attached to the pleading was 131 pages of materials, including sixty-seven pages submitted as a "Notification of Amended Federal Lawsuit, Executor's Entitlement Land Deed and Conditional Acceptance." (*See* doc. 38-1; doc. 38-2; doc. 38-3; doc. 38-4; doc. 38-5.) The referenced attachment included an "Amended Complaint," (*see* doc. 38-1 at 5), that again identified several private parties, law enforcement members, public officials, attorneys, and judicial officers as defendants, (*see id.* at 3–4). Although the "Amended Complaint" proceeded page upon page with generalized legal assertions and vague allegations, it did nothing to tether any particular fact to any legal claim against any identified defendant. In short, it again failed to set out "a short and plain statement of the claim showing that the pleader is entitled to relief," with which

Sanders was previously directed to comply. (*See* doc. 34 at 1 (citing Fed. R. Civ. P. 8(a)(2))).

After a bevy of motions and filings, and an unsuccessful bankruptcy filing by Sanders, on February 25, 2025, the Magistrate Judge recommended that this action be dismissed with prejudice based upon Sanders's continued failure to cure her pleading deficiencies. (*See* doc. 69 at 7.) Before this Court could rule on the Recommendation, Sanders filed yet another "Amended Civil Complaint" generally against the same defendants. (*See* doc. 73.) This Court accepted the filing and denied the Magistrate Judge's dismissal recommendation as moot. (*See* doc. 74.) The Court also noted that that it would dismiss any unserved defendants if they were not timely and properly served.

Defendants McPhail, Nelson and Rollins filed motions to dismiss. Those motions remain pending. All other defendants, who remained unserved, were dismissed on July 11, 2025. (*See* doc. 85.) Sanders responded to Nelson and Rollins's Motion to Dismiss with a Motion to Strike. (Doc. 81.) Sanders did not respond to McPhail's Motion to Dismiss. Those motions are thus ripe for decision.

## DISCUSSION

McPhail, Nelson and Rollins raise a host of arguments for dismissal, with Rollins also raising Sanders's failure to serve him. Those arguments include Sanders's continued failure to state a claim, her failure to remedy her pleading deficiencies (shotgun complaint), her advancement of frivolous sovereign-citizen theories—including her insistence in proceeding under a claimed registered estate name—Nelson's entitlement to qualified immunity and quasi-judicial immunity, the *Rooker-Feldman* doctrine, and lack of jurisdiction.

Specific to Rollins, Rollins is due to be dismissed for lack of service. Rollins has been a named defendant since June 26, 2024, when an amended complaint was filed that added him as a defendant. (*See* doc. 38.) To date, Rollins has not been

3

served. Rollins, through counsel, has entered a limited appearance to call attention to this failure. (*See* doc. 78 at 1 n.1.) The Court previously informed Sanders of the possible dismissal of defendants who have not been served. (*See* doc. 82.) Yet Rollins remains unserved despite Sanders's notice of this deficiency. Therefore, pursuant to Fed. R. Civ. P. 4(m), Rollins will be dismissed from this action.

That leaves for consideration the motions to dismiss filed by McPhail and Nelson.

### A.     McPhail and Nelson Generally

First, the Complaint and its amendments continue to reflect classic "shotgun pleading" tactics. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321–23 (11th Cir. 2015). The Eleventh Circuit has identified four common types of shotgun pleadings: (1) pleadings that "contain[] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint," *id.* at 1321 (footnote omitted); (2) pleadings that are "guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," *id.* at 1322 (footnote omitted); (3) pleadings that "commit[] the sin of not separating into a different count each cause of action or claim for relief," *id.* at 1323 (footnote omitted); and (4) pleadings that commit "the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* (footnote omitted). "Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of [the procedural] rules,'" which are designed to enable courts to determine "which facts support which claims" and "whether the plaintiff has stated any claims upon which relief can be granted." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland*, 792 F.3d at 1320).

4

Sanders's operative Complaint remains an impermissible "shotgun pleading." She continues to list titles and defendant groupings and make rambling allegations that fail to connect factual allegations against each defendant to any assertion of what must be proven for each claim. *See Weiland*, 792 F.3d at 1321–23; *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) ("Many of the factual allegations appear to relate to only one or two counts, or to none of the counts at all. Thus, a reader of the complaint must speculate as to which factual allegations pertain to which count."); *see also Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam) ("The result is that . . . any allegations that are material are buried beneath innumerable pages of rambling irrelevancies."); *Osahar v. U.S. Postal Serv.*, 297 F. App'x 863, 864 (11th Cir. 2008) (per curiam) ("[T]o force the parties and the court to sift through [voluminous attachments] would frustrate the purpose of Rule 8(a)(2)."). And these musings are not based on any coherent recitation of facts but contain the same theories often used in constitutional or sovereign citizen pleadings filed in federal courts referencing "*the cestui que vie*" trust.[2]

For example, her first cause of action is styled as "Civil Right[s] Violations" and lists six defendants. While the claim does eventually reference Sanders's due process rights under the Fifth and Fourteenth Amendments, it largely lumps McPhail (a private lawyer and therefore private actor) with three public officials, including a state court judge and clerk of court, and does not explain what McPhail has done that constitutes a violation of Sanders's due process rights or what makes him a state actor, let alone plead the necessary elements for such a cause of action against McPhail. The same holds true for Nelson, a sheriff. His name is sprinkled throughout

---

[2] *See Thomas v. Fam. Sec. Credit Union*, No. CV 23-00222, 2024 WL 478070, at *7 (S.D. Ala. Jan. 17, 2024) (discussing and rejecting the Cestui Que Vie Act of 1666, or a "cestui que vie" trust, theory often invoked by the sovereign citizen movement), *report and recommendation adopted*, No. 1:23-CV-222, 2024 WL 474837 (S.D. Ala. Feb. 7, 2024).

the Complaint and is included in Sanders's "Civil Right[s] Violations" count of which McPhail is a defendant. For that reason alone, the operative Complaint against McPhail and Nelson is due to be dismissed.

Further, to the extent Sanders is asking this Court to review, overturn, or interfere with a state court judgment, this Court lacks subject matter jurisdiction over these claims under the *Rooker-Feldman* doctrine. "The *Rooker-Feldman* doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation." *Goodman ex rel. Goodman v. Sipos*, 259 F.3d 1327, 1331 (11th Cir. 2001). The doctrine "provides that federal courts, other than the United States Supreme Court, have no authority to review the final judgments of state courts." *Id.* (internal quotations and citation omitted).

Insofar as Sanders seeks to have the Alabama judgment, and accompanying writ, declared null and void by this Court, such a claim is barred by the *Rooker-Feldman* doctrine. Also, insofar as Sanders alleges any claims about the foreclosure being wrongful or the actual issuance of the order of eviction being wrongful, she may not do so under *Rooker-Feldman*. This includes any claims requesting this Court set aside the writ of possession issued by Judge Whorton; claims premised on a finding that Judge Whorton did not follow proper procedures in effectuating the eviction; and any claims that essentially require this Court to review the state court's dispossessory proceedings. In sum, the *Rooker-Feldman* doctrine applies and strips this Court of jurisdiction over the claims asserted against McPhail and Nelson.

### B. McPhail Specifically

But the shotgun nature of the Complaint against McPhail and Nelson and the *Rooker-Feldman* doctrine are not the only reasons for dismissal. As to McPhail, Sanders makes a "Civil Right[s] Violation[]" claim, a "Non-Judicial and Wrongful Foreclosure" claim, and an "F.D.C.P.A." claim. (Doc. 73 at 3, 9, 11.)

McPhail is not alleged to be a state actor, nor is he alleged to be in a conspiracy with one. Merely serving as an attorney for a private corporation that elicits actions or orders (or a writ in this case) from a state court or state actor does not mean McPhail operated under color of law sufficient to support a claim for a civil rights violation against him. *See Wilson v. Bush*, 196 F. App'x 796, 798 (11th Cir. 2006) (per curiam) (affirming summary judgment for defendant-attorney, who filed a quiet-title action on behalf of a private party against the property owner, because he was not a state actor as was required to maintain civil rights action against an attorney pursuant to § 1983).

Nor does Sanders set out in any coherent fashion what McPhail did that violated her due process rights, especially since it appears that Sanders had the availability of post-deprivation state remedies, and she fails to allege that Alabama law does not provide her with an adequate post-deprivation remedy. *Tinney v. Shores*, 77 F.3d 378, 382 (11th Cir. 1996) (per curiam) ("[T]he Tinneys have failed to state a valid procedural due process claim because they have not alleged that Alabama law provided them with an inadequate post-deprivation remedy." (footnote omitted)).[3]

And to the extent Sanders brings a wrongful foreclosure claim against McPhail, that claim also fails to state a claim because McPhail is not the lender over the subject property and because Sanders makes no allegation that the foreclosure occurred for an improper or wholly unrelated purpose. *See Jackson v. Wells Fargo Bank, N.A.*, 90 So. 3d 168, 171 (Ala. 2012) (noting that a wrongful foreclosure claim exists only where "a mortgagee uses the power of sale given under a mortgage for a purpose other than to secure the debt owed by the mortgagor" (citation omitted)).

---

[3] Sanders references the Fifth, Sixth, and Fourteenth Amendments and broadly references her due process rights and the right to notice and an opportunity to be heard. In substance, Sanders is making a procedural due process claim.

And even if one was to assume that the foreclosure was defective for some reason, that defect does not support a cause of action for wrongful foreclosure against the lender's attorney. As such, Sanders has failed to state an actionable wrongful foreclosure claim against McPhail.

The third and final claim against McPhail is a vague allegation that McPhail violated the Fair Debt Collection Practices Act by "misrepresentation, fraud, harassment, unfair means, and deception to collect a debt." (Doc. 73 at 11 (emphasis omitted).) Specifically, Sanders alleges that "[t]he Supreme Court ruled lawyers and attorneys are NOT licensed to practice law, the nature of lawyer-craft in America[,] as per the United States Supreme Court; The practice of Law CAN NOT [sic] be licensed by any state/State. . . . The defendants misrepresented themselves to the court as licensed attorneys when they do not have a license to practice law. A certificate is not a license to practice Law as an occupation, nor do business as a law firm." (*Id.* at 11–12 (citation omitted).) This sovereign citizen rubric is frivolous and fails to satisfactorily state a claim, if for no other reason than that the United States Supreme Court has never issued such a ruling.

### C. Nelson Specifically

Sanders's sole claim for "Civil Rights Violations" against Nelson suffers from similar infirmities. Sanders purportedly intends to sue Nelson for a violation of Sanders's constitutional rights under the Fifth, Sixth, and Fourteenth Amendments. But she does not provide facts supporting a cause of action for a violation of these three amendments.[4] Presumably, Nelson is being sued because he, as a sheriff, was involved in Sanders's state court eviction, but that does not mean he violated any constitutional rights, especially when that involvement was pursuant to a facially valid state court judicial process (a writ), as it was here. Thus, it fails to state a claim,

---

[4] She does not make a Fourth Amendment claim.

and Nelson is entitled to qualified immunity and quasi-judicial immunity. *See Mississippi ex rel. Giles v. Thomas*, 464 F.2d 156, 159–60 (5th Cir. 1972) (per curiam) (binding) (affirming trial court's finding of immunity for sheriff deputies who executed a court order of eviction); *Roland v. Phillips*, 19 F.3d 552, 556 (11th Cir. 1994) ("[L]aw enforcement personnel, acting in furtherance of their official duties and relying on a facially valid court order, are entitled to absolute quasi-judicial immunity from suit in a [S]ection 1983 action."); *see also Nicholson v. Moates*, 135 F. Supp. 2d 1185, 1189–91 (M.D. Ala. 2001) (granting motion to dismiss where deputy sheriff's alleged wrongful levy of plaintiff's personal property did not violate due process claim due to adequate post-deprivation state remedies); *Scott v. O'Grady*, 975 F.2d 366, 367 (7th Cir. 1992) (affirming dismissal of suit where Eleventh Amendment immunity attached to the defendant-sheriff because he acted as an arm of the state judicial system in executing court order).

## CONCLUSION

For a variety of reasons, Plaintiff's operative Complaint against the remaining defendants is due to be dismissed.

Accordingly, it is **ORDERED** as follows:

1. Defendant Shannon Rollins is **DISMISSED without prejudice** for failure by the Plaintiff to timely serve him;

2. Plaintiff's *Application to Proceed without Preparing Fees or Costs* (doc. 77) is **DENIED as moot**;

3. The Motion to Dismiss (doc. 78) filed by Jeff Nelson is **GRANTED**;

4. The Motion to Dismiss (doc. 83) filed by Kent McPhail is **GRANTED**; and

5. This case is **DISMISSED WITH PREJUDICE** as to Defendants Jeff Nelson and Kent McPhail, but as to all other defendants, it is **DISMISSED WITHOUT PREJUDICE**.

A separate Final Judgment will issue.

**DONE** and **ORDERED** on this the 22nd day of August 2025.

_____
R. AUSTIN HUFFAKER, JR.
UNITED STATES DISTRICT JUDGE